HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEAST FOODS, LLC, a California limited liability company,

Plaintiff,

v.

HOUSTON CASUALTY COMPANY, a foreign corporation,

Defendant.

CASE NO. 2:25-cv-1322-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendant Houston Casualty Company's ("HC") Motion for Judgment on the Pleadings, Dkt. # 22, and Plaintiff Feast Foods, LLC's ("Feast Foods") Motion to Certify State Law Questions to Washington Supreme Court, Dkt. # 27.  The Court has reviewed the motions, the submissions in support of and in opposition to the motions, and the balance of the record.  HC requested oral argument on its Motion for Judgment on the Pleadings, but the Court finds oral argument is not necessary to resolve the motion.  For the reasons set forth below, the Court **GRANTS IN PARTAND DENIES IN PART** HC's Motion for Judgment on the Pleadings, and **DENIES** Feast Foods' Motion to Certify State Law Questions.

ORDER – 1

## II.    BACKGROUND

This case concerns an insurance company's obligation to provide coverage for an underlying putative class action alleging violation of the Washington Equal Pay and Opportunities Act ("EPOA").  In 2022, the EPOA was amended to require employers "with 15 or more employees" to disclose in "each posting for each job opening" the "wage scale or salary range" and "a general description of all of the benefits and other compensation to be offered to the hired applicant."  RCW 49.58.110(1)(a), (3).  The amendment led to numerous lawsuits for alleged violations of this pay disclosure requirement, including the underlying lawsuit at issue in this case.

On or around January 31, 2025, a plaintiff filed a putative class action against Feast Foods in King County Superior Court captioned *Sahara Jacobson v. Jack in the Box Inc., et al.*, No. 25-2-03004-1-SEA (the "Underlying Action").  Dkt. # 16-2.  The complaint in the Underlying Action begins by stating the "lawsuit follows important, recent research which revealed pervasive pay disparity in Washington with respect to both women and other protected classes."  *Id.* ¶ 4.  It goes on to explain the legislative history of the recent EPOA amendment, including that "[s]ome folks do not have the networks or ability to negotiate salaries" and the amendment is intended to "increase the ability to negotiate pay."  *Id.* ¶ 5.  The complaint asserts a single cause of action for violation of RCW 49.58.110 because "Plaintiff and the Class members applied for job openings with Defendants where the job postings did not disclose the wage scale or salary range being offered."  *Id.* ¶ 50.  The class definition includes "[a]ll individuals" who applied for a non-compliant job postings within the relevant period, regardless of whether they belong to a protected class. *Id.* ¶ 40.

HC is Feast Foods' insurer under an Employment Practices Liability Policy (the "Policy") covering the period from September 30, 2024 to September 30, 2025.  Dkt. # 1 ¶ 10; Dkt. # 16-1.  As described in more detail below, the Policy covers certain claims for an "Employment Practices Wrongful Act," including an act of "Discrimination," as those

ORDER – 2

terms are defined in the Policy. Dkt. # 16 ¶¶ 7–9. Feast Foods alleges that it submitted a timely claim to HC for the Underlying Action, but "HC has refused to defend Feast Foods outside of the Policy's Wage and Hour Defense Costs Sublimit Endorsement and has denied any duty to indemnify Feast Foods based on the wage and hour exclusion and definition of 'Loss' in the Policy." Dkt. # 1 ¶ 3.

On July 15, 2025, Feast Foods filed this action for: (1) declaratory judgment; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) violation of the Unfair Claims Settlement Practices Act. *Id.* ¶¶ 15–29. On August 19, 2025, HC filed its answer and counterclaims. Dkt. # 16. HC asserted three counterclaims for declaratory relief as follows:

(1) **Counterclaim One – No Coverage for the Underlying Lawsuit**: Declaration that "violation of RCW 49.58.110 is not an Employment Practices Wrongful Act under the Policy, that HC has no duty to defend or indemnify Feast Foods in connection with the Underlying Lawsuit, and that it has no obligation to pay Defense Costs in the Underlying Lawsuit except as may be provided for under the Wage and Hour Defense Sublimit." *Id.* ¶ 27.

(2) **Counterclaim Two – Definition of Loss**: Declaration that "the $5,000 statutory damages recoverable under RCW 49.58.070(1) is not Loss under the Policy and that HC has no obligation under the Policy to pay that portion of any settlement or judgment attributable to such amounts." *Id.* ¶ 36.

(3) **Counterclaim Three – Wage and Hour Defense Sublimit**: Declaration regarding "whether the Underlying Lawsuit falls within the scope of the Wage and Hour Sublimit and whether HC is obligated to pay an aggregate sublimit of $25,000 for Defense Costs incurred in those actions." *Id.* ¶ 43.

On October 2, 2025, HC filed the instant Motion for Judgment on the Pleadings as to its three counterclaims. Dkt. # 22. On November 14, 2025, Feast Foods filed its Motion to Certify. Dkt. # 27.

ORDER – 3

## III.  DISCUSSION

### A.    Motion to Certify State Law Questions

The Court begins by addressing Feast Foods' Motion to Certify.  Feast Foods asks the Court to certify the following questions to the Washington Supreme Court:

(1) Does the violation of RCW 49.58.110 qualify as "discrimination" under the subject employment practices liability insurance policy or policies?

(2) Are the statutory damages provided for in RCW 49.58.070 and authorized by RCW 49.58.110(5)(a) covered "loss" under the subject employment practices liability insurance policy or policies?

(3) Is RCW 49.58.110 a "wage and hour law" under the subject employment practices liability insurance policy or policies?

Dkt. # 27 at 2.  The Court declines the invitation.

"[T]he decision to certify a question to a state 'rests in the sound discretion of this court.'"  *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1223 (9th Cir. 2021) (quoting *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984)).  "We invoke the certification process only after careful consideration and do not do so lightly." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003)).  Under RCW 2.60.020, a federal court may certify state law questions to the Washington Supreme Court if "in the opinion" of the federal court, (1) "it is necessary to ascertain the local law of this state in order to dispose of such proceeding"; and (2) "the local law has not been clearly determined."  The Ninth Circuit has further identified the following factors for consideration: "(1) whether the question presents 'important public policy ramifications' yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'"  *Murray*, 924 F.3d at 1072 (quoting *Kremen*, 325 F.3d at 1037– 38).

Federal courts "regularly decide issues of state law without certifying questions to the state's highest court," including issues of "interpreting insurance contracts." *Marler v.*

ORDER – 4

*Aspen Am. Ins. Co.*, No. 20-cv-616, 2021 WL 1599193, at *3 (W.D. Wash. Apr. 23, 2021) (quoting *U.S. Bank, N.A. v. White Horse Estates Homeowners Ass'n*, 987 F.3d 858, 867 (9th Cir. 2021)). In a recent case in this District, the court denied a motion to certify in a similar insurance coverage dispute involving an underlying EPOA lawsuit. *See Round One Entm't, Inc. v. U.S. Specialty Ins. Co.*, No. 25-cv-1693, 2026 WL 1078205, at *1 n.1 (W.D. Wash. Apr. 12, 2026). There, the court found the proposed questions "do not involve a controlling question of state law that is not settled, but rather an interpretation of the Policy under existing settled insurance law." *Id.*

The Court, in its discretion, likewise finds the proposed questions are not appropriate for certification. As for proposed question one, certification is not appropriate under RCW 2.60.020 because, in this Court's opinion, the issues presented do not involve unsettled local law. Rather, they may be resolved by applying established principles of insurance policy interpretation. Moreover, resolution of these issues turns on the specific language of the Policy in this case. Thus, under the *Murray* factors, the proposed question does not necessarily have broad application, and certification is not appropriate after consideration of the state court's caseload. As for proposed questions two and three, for the reasons explained below, the Court finds resolution of these issues are unnecessary to resolve the parties' dispute. With respect to proposed question three in particular, Feast Foods concedes that "RCW 49.58.110 is not a 'wage and hour' law." Dkt. # 24 at 15. Accordingly, Feast Foods' request for certification is denied.

### B.    Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). On a Rule 12(c) motion, courts "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of

ORDER – 5

material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*

The parties agree that the Policy should be interpreted under Washington law. "In Washington, insurance [policies] are construed as contracts." *Panorama Village Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 913–14 (Wash. 2001). "An insurance policy is construed as a whole, with the policy being given a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id.* "If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists." *Id.* "If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity." *Id.* "Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured." *Id.* "A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable."

### i. Counterclaim One – No Coverage for the Class Action

On HC's first counterclaim, the question before the Court is whether the Underlying Action is a claim for an "Employment Practices Wrongful Act" under the Policy. The Court finds it is not.

The Policy, as amended, states in relevant part:

**(A) Employment Practices Wrongful Act Coverage**
The Company shall pay Loss and Defense Costs, in excess of the Deductible and subject to this Policy's Limit of Liability, that an Insured is legally obligated to pay as a result of a Claim made against an Insured for an Employment Practices Wrongful Act . . .

Dkt. # 16 ¶ 7. "Claim" is defined, in relevant part, as "a written demand made by or on behalf of a Claimant alleging damages[.]" *Id.* ¶ 8. "Employment Practices Wrongful Act" is defined, in relevant part, as follows:

ORDER – 6

"**Employment Practices Wrongful Act**" means one or more of the following actual or alleged wrongful acts, errors, or omissions, by an Insured against an Employee, which *directly results* in an unlawful impairment of the terms and conditions of employment or continued employment:

(1) "**Discrimination**," which means any actual or alleged adverse employment action or threatened action against an Employee *because of* an Employee's age, race, ancestry, color, religion, actual or perceived disability, marital status, medical condition, genetic information, military or veteran status, national origin, sex, gender, gender identity and/or gender expression, or sexual orientation, or status as a member of any other class of individuals protected by the law of the state or local jurisdiction in which the Claimant is employed;

*Id.* ¶ 9 (emphasis added).[1][2]

The Court finds that the Underlying Action is not for an "Employment Practices Wrongful Act" under the Policy for at least three reasons. First, under the Policy, an "Employment Practices Wrongful Act" is an act, error, or omission by Feast Foods against an Employee that "*directly results* in an unlawful impairment of the terms and conditions of employment or continued employment." *Id.* ¶ 9 (emphasis added). Under any reasonable interpretation of the Policy's language, Feast Foods' alleged failure to disclose pay information in job postings cannot be said to "directly result" in an unlawful impairment of the terms and conditions of employment. There are several intermediate steps between applying for a non-compliant job posting and suffering an unlawful impairment of employment terms, including at minimum being invited to interview, being offered a position, being offered lower pay than similarly qualified candidates, being impaired in pay negotiations due to the lack of pay disclosure, and finally accepting and starting employment with a lower pay. This long chain of events is far from direct. Feast

---

[1] "Employment Practices Wrongful Act" also includes acts of "Harassment," "Retaliation," and "Inappropriate Workplace Conduct," but only "Discrimination" is at issue in this case. *Id.*

[2] "Employee" is broadly defined to include "an individual who has filed an application for employment with the Named Insured[.]" *Id.* ¶ 10. Thus, the parties do not dispute that "Employee" may include the putative class members in the Underlying Action.

ORDER – 7

Foods does not offer an alternative interpretation of the "directly results" language that does not build in these layers of assumptions. *See* Dkt. # 24 at 8–9.

Second, the putative class members in the Underlying Action do not fall within one of the protected classes listed in the Policy's definition of "Discrimination." The list includes protected classes like age, race, religion, gender, and "any other class of individuals protected by the law of the state or local jurisdiction in which the Claimant is employed." Dkt. # 16 ¶ 9. Feast Foods argues that "job applicants" is an "other class of individuals protected by the law of the state." Dkt. # 24 at 8–9. It is an established principle of contract interpretation, however, that "a general term used in conjunction with specific terms will be deemed to include only those things that are in the same class or nature as the specific ones." *Viking Bank v. Firgrove Commons 3, LLC*, 334 P.3d 116, 121 (Wash. Ct. App. 2014). The specific terms used in the definition are traditional protected classes, or at minimum refer to some particular characteristic that sets a group of individuals apart in society. Thus, the phrase "other class of individuals protected by the law of the state" must also refer to a similar class of individuals. It is not reasonable to construe the phrase so broadly as to encompass "job applicants"—a transitory status that applies to most individuals at some point in their lives. *See Round One*, 2026 WL 1078205, at *4 ("'Job applicants' is not an 'other status' under the Policy.").

Third, under the Policy, "Discrimination" means an "adverse employment action . . . against an Employee *because of*" the Employee's status within one or more of the listed groups. Dkt. # 16 ¶ 9 (emphasis added). Again, under any reasonable interpretation of this language, it cannot be said that Feast Foods failed to include required pay information in its job postings "because of" any characteristic of the putative class members. Nothing in the record suggests the Feast Foods failed to comply with the EPOA's pay disclosure requirement to target any particular group of people. Thus, the

ORDER – 8

causal relationship between the "adverse employment action" and the Employee's status within a listed class is lacking.[3] [4]

Feast Foods argues that the EPOA is an anti-discrimination statute and "[a]s a matter of law, a claim asserted under a state anti-discrimination statute alleges 'Discrimination' within the meaning of the Policy." Dkt. # 24 at 9. This takes too broad of a view of the matter. Feast Foods is correct in that the EPOA "was clearly drafted to combat a discriminatory practice." *Round One*, 2026 WL 1078205, at *4. Nevertheless, coverage must be analyzed according to the actual substance of the Underlying Action and the Policy's language. As already noted, the Underlying Action is limited to a single claim for failure to disclose pay information. Liability for this claim is not dependent on any harm to a protected class, even in the form of disparate impact that builds over time. *See* RCW 49.58.110(1). Indeed, the class definition includes "[a]ll individuals" who applied for a non-compliant job posting within the relevant period, regardless of whether they belong to a protected class. Dkt. # 1-2 ¶ 40. Moreover, "Employment Practices Wrongful Act" and "Discrimination" are both defined terms under the Policy with specific meanings. As discussed above, when the limited scope of the Underlying Action's sole claim is compared to the specific defined terms at issue, the Underlying Action plainly does not fall within the scope of coverage. While the court in *Round One* interpreted a different insurance policy, it likewise found that the intent of the EPOA and some references to "discriminatory hiring practices" in the underlying complaint, without more, were insufficient to bring the underlying class action within the scope of the insurance policy's definition of "Discrimination." *See Round One*, 2026 WL 1078205, at *4 ("However, the putative class action itself does not allege that Round One engaged in discrimination as defined in the

---

[3] Even assuming Feast Foods' broad interpretation that "job applicants" is a protected class under the Policy, nothing in the record suggests Feast Foods failed to disclose pay information "because" it would be viewed by job applicants.

[4] The parties also dispute whether failing to disclose pay information is an "adverse employment action." The Court need not reach this issue.

ORDER – 9

Policy."). The same is true here. For these reasons, the Court grants HC's motion for judgment on the pleadings for its Counterclaim One.[5]

### ii.    Counterclaim Two – Definition of Loss

Next, HC argues that "coverage under the Policy is limited to the payment of Loss and Defense Costs" and the Policy's definition of "Loss" does not include the statutory damages at issue in the Underlying Action. Dkt. # 22 at 3. Accordingly, HC seeks "in the alternative, a declaration under Count II of the Counterclaim that the Policy does not afford coverage for those amounts." *Id.* at 4. Because the Court has already found the Underlying Action is not covered by the Policy, it declines to reach this alternative basis for relief. HC's motion for judgment on the pleadings on Counterclaim Two is therefore denied.[6]

### iii.    Counterclaim Three – Wage and Hour Defense Sublimit

Finally, HC seeks a "declaration as to whether RCW 49.58.110 is a 'wage and hour law' within the meaning of the Policy and so whether limited Defense Cost coverage is afforded for the Underlying Action by operation of the Policy's Wage and Hour Defense Cost Sublimit." Dkt. # 22 at 4. In response, Feast Foods "agrees that RCW 49.58.110 is not a 'wage and hour' law." Dkt. # 24 at 15. It argues, however, that HC is estopped from denying coverage under the sublimit because "[b]efore this litigation began, HC expressly acknowledged coverage under the Wage and Hour Defense Costs Sublimit Endorsement, did so without reserving any rights as to that coverage part, and appointed defense counsel to represent Feast Foods." *Id.* In reply, HC disputes that it failed to reserve rights to disclaim coverage under the sublimit. Dkt. # 26 at 11.

---

[5] The Court rejects Feast Foods' argument that it is premature to rule on HC's duty to indemnify. The issue of "whether coverage exists under the applicable policy for the various claims in the Underlying Action" is "dispositive of both the duty to defend and duty to indemnify." *Homesite Ins. Co. v. Zajac*, 481 F. Supp. 3d 1198, 1202 (W.D. Wash. 2020).

[6] It appears that the Court's decision as to HC's Counterclaim One renders Counterclaim Two moot and any decision regarding the definition of "Loss" would be an impermissible advisory opinion. To the extent HC seeks to continue pursuing relief under Counter Two, it must address in any subsequent briefing the issue of mootness.

ORDER – 10

"[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* Feast Foods' complaint alleges that HC "agreed to defend Feast Foods under the Policy's Wage and Hour Defense Cost Sublimit Endorsement." Dkt. # 1 ¶ 11. Feast Foods' answer to HC's counterclaims asserts estoppel as an affirmative defense. Dkt. # 17 at 6. The answer also incorporates by reference two letters dated April 29, 2025 and August 1, 2025. *See id.* ¶¶ 17, 38. The parties dispute whether under those letters, HC reserved rights as to coverage under the Wage and Hour Defense Costs Sublimit. Construing these pleadings in the light most favorable to Feast Foods, and based on the present record and arguments presented by the parties, Feast Foods' estoppel affirmative defense is sufficient to preclude judgment on the pleadings on this counterclaim. Accordingly, HC's motion is denied as to Counterclaim Three.

ORDER – 11

## IV.  CONCLUSION

For the forgoing reasons, the Court **GRANTS** HC's Motion for Judgment on the Pleadings, Dkt. # 22, as to Counterclaim One, and **DECLARES**:  Except as may be provided for under the Wage and Hour Defense Sublimit, the Underlying Action is not within the scope of coverage afforded under the Policy because it does not involve "Employment Practices Wrongful Acts" as the Policy defines that term.

HC's Motion for Judgment on the Pleadings as to Counterclaims Two and Three is **DENIED**.  Feast Foods's Motion to Certify State Law Questions to the Supreme Court of Washington, Dkt. # 27, is **DENIED**.

Dated this 22nd day of May, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 12